GRAND LODGE UNITED BROS. OF FRIENDSHIP OF TEXAS et al. v. ROSE. (No. 6443.)

(Court of Civil Appeals of Texas. Austin. May 24, 1922. Rehearing Denied July 1, 1922.)

1. Libel and slander ⚖➝106—Admission of document circulated by a lodge in action against it and its officers held proper.

In an action for libel against a lodge and its grand master, in which a libelous statement was posted at places where it could be seen by other persons as well as members of the lodge, and the grand lodge had ratified the action of its grand master in issuing and circulating the libelous statement, admitting a copy of the statement in evidence was not error.

2. Corporations ⚖➝493—Corporation may be held civilly liable for libel.

A corporation may be held civilly liable for libel, especially as to actual damages.

3. Libel and slander ⚖➝4—Question of malice held to be immaterial where crime is charged.

In an action against a lodge and its grand master for libel in which the document complained of charged plaintiff with having accepted a bribe, the question of malice was immaterial, since if defamatory words charge a party with commission of a crime, actual damages are recoverable, though there is no malice.

4. Libel and slander ⚖➝107(1) — Permitting plaintiff to testify as to number of persons in his family held not error, where mental anguish claimed.

In an action against a lodge for libel, in which the jury was instructed to take into consideration mental anguish or humiliation suffered by plaintiff as a direct and proximate result of the publication or circulation of the document in question, in determining damage, permitting plaintiff to testify that at the time in question he had a family consisting of his wife and five children was not error, since the testimony may have aided the jury in determining the question of mental anguish or humiliation of plaintiff.

5. Libel and slander ⚖➝108—Permitting plaintiff to testify as to character of his business prior to libel held not error.

In an action against a lodge and its grand master for libel, in which loss of trade was alleged to be a ground of special damage, permitting plaintiff, the owner of a barber shop operated for several years by him, to show the character of his business prior to and at the time the document in question was issued and circulated was not error.

6. Libel and slander ⚖➝104(2) — Permitting plaintiff to testify that the attitude of defendant toward him was unfriendly held proper.

In an action for libel against a lodge and its grand master, permitting plaintiff to testify that the attitude of the grand master of the lodge toward him was unfriendly was not error.

7. Witnesses ⚖➝280—Exclusion of question as to whether a plaintiff's son was sent to the penitentiary held not error.

In an action for libel against a lodge and its grand master, in which damage from loss of trade and mental anguish and humiliation was alleged, exclusion of an answer to a question asked plaintiff in cross-examination as to whether one of his sons was not sent to the penitentiary for a felony was proper, since an affirmative answer to the question would not have elicited testimony bearing upon plaintiff's mental humiliation and loss of customers in his barber trade because of the publication of the libel.

8. Libel and slander ⚖➝123(1) — Refusal to give peremptory instructions for defendants not error.

In an action against a lodge and its grand master for libel for posting in a place where members of the lodge and others could see it a

---

⚖➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

document charging plaintiff with the crime of having accepted a bribe, refusal to give a peremptory instruction to find for defendants was not error.

### On Motion for Rehearing.

**9. Libel and slander ☞107(1), 108—Exclusion of testimony that a son of plaintiff was sent to the penitentiary held proper.**

In an action by the owner of a barber shop against a lodge and its grand master for libel, testimony that a son of plaintiff had been sent to the penitentiary for a felony about the time the libel was published was properly excluded, being too remote to have bearing on loss of business by plaintiff and humiliation and distress of mind suffered by him on account of the libel.

**10. Libel and slander ☞124(8)—Instruction as to measure of damages held correct.**

In an action against a lodge and its grand master for libel, an instruction to find the amount of damages which would compensate plaintiff for his injuries received from the publication and circulation of the document in question, and that in establishing the damages to take into consideration any pecuniary loss or loss of business that plaintiff had suffered or might suffer in the future as a direct and proximate result of the publication, and also any mental anguish or humiliation which he suffered as a direct and proximate result of the publication, was proper.

Appeal from District Court, McLennan County, Jas. P. Alexander, Judge.

Action by S. B. Rose against the Grand Lodge, United Brothers of Friendship of Texas, and others. From judgment for plaintiff, the named defendant and defendant W. F. Bledsoe appeal. Affirmed.

Meek & Kahn, of Houston, for appellants.
Stanford & Stanford, of Waco, for appellee.

KEY, C. J. Appellee, S. B. Rose, brought this libel suit against the Grand Lodge, United Brothers of Friendship of Texas, a fraternal benefit society, and against its grand officers. There was a jury trial, which resulted in a judgment for the plaintiff for $1,000, against the Grand Lodge and W. F. Bledsoe, its president, and that the plaintiff recover nothing as against the other defendants; and the Grand Lodge and Bledsoe have appealed.

The basis of the plaintiff's suit is the following document, which was issued and circulated by the defendant Bledsoe, acting as Grand Master of the Grand Lodge. None of the other defendants signed the document themselves, though their names appear thereon, but were placed there by the defendant Bledsoe, apparently without authority from the other defendants:

"Tack up in the Hall.

"Open Letter to the Jurisdiction of U. B. F. & S. M. T. of Texas.

"October 21, 1918—Greetings:

"Dear Brothers and Sisters: It becomes fittingly necessary in the life and activity of our great order for us to do some plain talking about the conditions of our Grand Lodge, and its destroyers and enemies. We begin with the Grand Lodge sessions at Tyler, Texas, August 1918. The entire staff of officers were elected by the delegates representing your subordinate lodges and temples; this was done by a unanimous vote after space was given for any members of the Grand Lodge to run for office who felt disposed to do so—there were none.

"Permit.

"Grand Master W. F. Bledsoe made it plain to the Grand Lodge that we had no permit, and would not receive one, until the property named by the Commissioner of Insurance had been disposed of, and further stated that he was doing his utmost to sell immediately. He then turned to C. H. Griggs, who had been sulking in his tent because he had not been appointed Grand Secretary, and said: 'Griggs, you have been very busy around the Commissioner's office. Am I telling the thing as it is? Griggs said 'Yes.' So you see nothing concerning the permit was hidden from the Grand Lodge.

"Cause of Delay of Permit.

"The world's war caused a serious decline in the value and sale of property, and instead of it taking the Grand Master ninety days, as he stated to the Grand Lodge, it took him 365 and more, and then suspended members gave him no little trouble by tampering with the sales. Yet with all these embarrassments he delivered the goods.

"The Emergency Convention.

"Do you remember about ten years ago, when Jesse Mosely, Sam Rose, Lawson Woods, and others of their stripe, attempted to sell out, break up and deliver to Gaines and Perry, the Grand Lodge of Texas. Take a look into the minutes of the N. G. L. at St. Paul, Minn., and you will see where they received $50.00 each for Fraternal Treason, Texas G. L. U. B. F.

"In that case, as in this, they called a provisional Grand Lodge emergency convention. Sam Rose, though suspended from the order, declared himself Grand Master; Jesse Mosely declared himself Grand Secretary. They promised the women a Grand Temple. We stopped them then and we shall stop them again if it becomes necessary. They thought that you belonged to that class of giddy headed women that would forfeit your membership in the order and $500.00 policy for something that they could not give. We ask you to stand nobly, as you have always stood, and give these suspended members and Grand Lodge traitors a good dose of 'hemlock' which will settle their activities forever.

"Jesse Mosely the Noted Fraternal Bandit.

"After losing every point in trying to destroy and sell out the U. B. F. Grand Lodge of Tex-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as, went into Mexico and joined the Mexican army, passing for a Spaniard. Not satisfied with his failure to break up the order in the United States, returns from Mexico and tried to secure Negro citizens to arm themselves and fight against their own country. He paid the penalty of a traitor, and that was death, but he was by far a better man than any of those who are now trying to destroy one of the race's most beneficial and foremost organizations in a crisis like this—the world war.

"The Emergency Convention is nothing less than an Emergency Mob, composed of defeated candidates, suspended members, kicked out, and put out, officers from K. P. Grand Lodge—I mean Frierson. Now see how these men stand in the order: Frierson, Lawson Wood, Sam Rose, and the Hon. M. H. Broyles are all suspended members from the order, and the membership of Texas is hereby warned to have nothing to do with them in private or public, as U. B. F. S. This little 'gang' is what is left of the Sam Rose-Mosely outlaw set of 1908. St. James Lodge No. 6 is standing by the Grand Lodge. Frierson and Woods, formerly belonged to this lodge, but they are now suspended, both from the local and Grand Lodge.

### "'Fight or Desert'—Is the Grand Lodge Command.

"Fight is to win and desert is to die.

"All officers and members commanded to drive Kaiser Frierson and his invaders from the Grand Lodge of Texas, and thus prove to the world that our motto means something—'United we stand, Divided we fall,' and any officers or members taking part with these suspended members, along with traitors and slanderers of the order, in a convention whose purpose is to discuss the affairs and business of the order in any way, have violated their oath and obligation, and at the same time made themselves liable to the law of the order, and will be dealt with in strict accordance to the law. This is no threat, it is the simple, plain law.

### "Thanks the Commissioner.

"We wish to thank the Commissioner for giving us more time on the Houston building, and also for the courtesy given our Grand Master in getting the real estate incident closed and our permit granted and hereby pledge that the financial condition of the order will be very critically guarded, and every interest protected, and also for the good will he extends to us for forty-seven years more of great success.

### "Attorney General.

"We thank the Attorney General for his kind words of inspiration and hope, that he found our Grand Lodge in better condition than ninety per cent. of such organizations.

"Brothers and Sisters, the world looked upon you, in going through the recent crisis, and a volume of praise comes from every nook and corner, now that the danger and trouble are over, why keep up the excitement? 'Peace be still, no harm cometh.' Keep that trashy literature out of your lodges and temples. No delegates elected to this meeting in Waco by the lodge and temples. No U. B. F. & S. M. T. money spent in attending such meetings, that has come through the legal channels.

"Our Grand Lodge is in better condition than it has been in many a year. We have paid up to the hour all claims matured. Let us all get down to business, and we shall make the world proud of our service.

"The Grand Master's Annual visit, which has been detained on account of selling the property, was received with an ovation until checked by the epidemic. We trust that the members will use every precaution to protect themselves and not depend on homemade remedies, but secure the service of the best skilled physicians, and have yourself properly treated. The Medical Director reports great activity in the new member increase, so do your best in the one thousand membership drive. Again, let us give you a final warning to have nothing to do at all with that 'gang' of suspended members, who, like Judas, looking for pieces of silver.

"Our Grand Treasurer gives a $50,000 bond, which he has done with ease, and the newly appointed Grand Secretary has given a $10,000 bond, now in the hands of the chairman of the Trustee Board, Prof. Wm. Anderson. So there is nothing to do but go forward.

"Done. by Order of the Grand Lodge Officers: Grand Council—Prof. B. F. White, Palestine, Texas. Mac Look, Fort Worth, Texas. Prof. A. H. Reagor, Mt. Selman, Texas. E. Z. Williams, Tyler, Texas. W. F. Bledsoe, G. M. Grand Trustees—Prof. Wm. Anderson, Smithville, Texas. Hon. R. C. Houston, Jr., Fort Worth, Texas. Hon. P. H. Dean, Navasota, Texas. Dr. W. H. Crawford, M. D. Medical Director, Austin, Texas. J. W. Jamison, Treas. Commissioners—Dr. R. T. Hamilton, M. D. Dallas, Texas. N. E. Jones, Gonzales, Texas. J. W. Jamison, Clarkesville, Texas. C. H. McGruder, Houston, Texas. W. F. Bledsoe, Marshall, Texas. C. H. McGruder, G. Secy."

The following is the court's charge to the jury, and the answers made by them to the special issues submitted in the charge:

"Gentlemen of the Jury: This case will be submitted to you on the following special issues, which, when answered by you, and signed by your foreman, will constitute your verdict in the case:

"Special issue No. 1: Were the statements contained in the circular letter in question, of date October 21, 1918, with reference to S. B. Rose true?" Answer: "No."

"Special issue No. 2: Were the statements in said circular letter as to S. B. Rose made by the defendant with malice, as that term is hereinafter defined? Malice, as used in the foregoing special issue No. 2, means ill will, or evil intention, with intent to injure the said S. B. Rose, knowing said statements to be untrue, or in reckless disregard as to whether they were true or false." Answer: "Yes."

"Special issue No. 3: Did the Grand Lodge of Texas of the United Brothers of Friendship and Sisters of the Mysterious Ten, with full knowledge of the facts, after said circular had been issued and circulated, ratify or confirm the publication of same?" Answer: "Yes."

"Special issue No. 4: What amount of damages will compensate the plaintiff for the injuries, if any, received by him by the publication and circulation of the circular in question?

In estimating the damages, if any, sustained by the plaintiff, you may take into consideration any pecuniary loss, or loss of business, if any, that he has suffered or may suffer in the future, as a direct and proximate result of the publication of said circular, and also any mental anguish or humiliation which you find he suffered as a direct and proximate result of the publication and circulation of said circular." Answer: "$1,000.00."

"In connection with special issue No. 2, you are instructed that if the defendant Bledsoe, in issuing and circulating the circular in question, did so in good faith, then you are instructed that malice, as hereinbefore defined, cannot be inferred alone from the words used in the circular, but must be proven by other evidence, if any, in the record.

"The burden of proof is upon the plaintiff to prove by a preponderance of the evidence the affirmative of special issue No. 2, and unless he has done so you will answer it No, and the burden is upon the defendant to prove the affirmative of special issue No. 1 by a preponderance of the evidence, and unless he has done so you will answer it no."

The statement of facts contains testimony which supports all the findings of the jury; and therefore they are adopted as this court's finding of facts.

### Opinion.

[1] Appellant's first assignment of error complains of the action of the trial court in overruling the Grand Lodge's objection to the introduction in evidence as against it of the circular or document heretofore copied, which was the basis of the plaintiff's cause of action; the objection being that there was no allegation in the plaintiff's petition that the constitution or by-laws of the lodge authorized any of the signers to make, publish, or have posted the circular referred to; also that the circular was intended for the members of the order only, and that the Grand Lodge, which is a corporate body, was not capable of bearing actual malice, and therefore the circular could not form the basis of a suit for libel against the lodge.

We approve the action of the trial court in overruling the objection referred to. The proof shows that the circular was posted at places where it could be seen by other persons as well as members of the order, and the plaintiff alleged and proved that the Grand Lodge had ratified the action of the defendant Bledsoe in issuing and circulating the document referred to.

[2, 3] It is well-settled law that a corporation may be held civilly liable for libel, and this is especially true as to actual damages; and in this case there was no recovery of punitory damages. Also, it is equally well settled in this state that, if defamatory words charge a party with commission of a crime, actual damages are recoverable; although the proof may show an entire absence of malice. Belo & Co. v. Fuller, 84 Tex. 450, 19 S. W. 616, 31 Am. St. Rep. 75. The document complained of in this case charged the plaintiff with having accepted a bribe, if it did not charge him with any other criminal offense, and therefore, in so far as the right to recover actual damages was concerned, the question of malice was immaterial.

[4] The second assignment complains because the court permitted the plaintiff to testify, that, at the time in question, he had a family consisting of his wife and five children. The plaintiff charged in his petition that the publication referred to caused him mental anguish or humiliation of mind; and the court instructed the jury that in determining the amount of damage they could take into consideration any mental anguish or humiliation which the plaintiff had suffered as a direct and proximte result of the publication and circulation of that document. We think the testimony referred to may have aided the jury in determining that issue, and therefore the assignment is overruled.

[5] The proof shows that the plaintiff owned a barber shop, which he had been operating for a number of years, and the third assignment complains of the action of the court in permitting him to show the character of his business prior to and at the time the document in question was issued and circulated. That testimony was competent, and we overrule the assignment which complains of its admission.

[6] We also overrule the fourth assignment, which complains of the action of the court in permitting the plaintiff to testify that the attitude of the defendant Bledsoe toward him was unfriendly.

[7] The fifth assignment of error complains of the action of the trial court in not permitting the defendants' counsel to ask the plaintiff this question, on cross-examination:

"Q. Is it not a fact that one of your boys was sent to the penitentiary for a felony?"

If the defendants had offered to show that immediately at or somewhere near the time of the issuance of the document complained of a son of the plaintiff had been convicted of an offense and sent to the penitentiary, it may be that such testimony would have been admissible as bearing upon the plaintiff's mental humiliation and loss of customers, but an affirmative answer to the question would not have elicited such testimony, and therefore we hold that no reversible error is shown.

[8] We also overrule the sixth assignment, which complains of the action of the court in not giving a peremptory instruction to find for the defendants.

The other assignments, except the twelfth and last, complain of certain portions of the charge of the trial court, and the refusal to give certain requested instructions. All these assignments have received due consideration, are not considered meritorious, and therefore are overruled.

The last assignment complains of the verdict of the jury as being unsupported by the testimony. That assignment has also received due consideration, and is likewise overruled.

No reversible error has been shown, and the judgment is affirmed.

### Opinion on Motion for Rehearing.

This motion presents only one question which we deem it necessary to further discuss. In the original opinion, in disposing of the Fifth assignment of error, it is stated that:

"If the defendants had offered to show that immediately at or somewhere near the time of the issuance of the document complained of a son of the plaintiff had been convicted of an offense and sent to the penitentiary, it may be that such testimony would have been admissible as bearing upon the plaintiff's mental humiliation and loss of customers, but an affirmative answer to the question would not have elicited such testimony, and therefore we hold that no reversible error is shown."

[9] In the motion for rehearing, attention is called to the fact that appellants stated to the court that they expected to show that a son of the plaintiff was convicted and sent to the penitentiary about the time of the publication of the document complained of, and that the son referred to was a member of the plaintiff's family.

The bill does not show that the proof referred to was offered at the time the court sustained the objection to the question, but we have reached the conclusion that the bill is sufficient to require this court to determine whether or not the appellants had the right to prove that a son of plaintiff, at the time referred to, had been convicted of a felony and sent to the penitentiary; and our conclusion is that such testimony was too remote, and was properly excluded. Appellee sued for, and the charge of the court in fact limited his recovery to, compensation for injuries sustained by him on account of the publication complained of. Those injuries were alleged to be loss of business by appellee, and humiliation and distress of mind suffered by him on account of the issuance of the defamatory document referred to.

[10] The trial court instructed the jury to find what amount of damages would compensate the plaintiff for the injuries, if any, received by him by the publication and circulation of the circular in question; and the answer of the jury was $1,000. The court also instructed the jury that in estimating such damages, they might take into consideration any pecuniary loss, or loss of business, if any, that the plaintiff had suffered or might suffer in the future as a direct and proximate result of the publication of said circular, and also any mental anguish or humiliation which he suffered as a direct and

proximate result of the publication referred to.

That was a correct charge, and by necessary implication it limited the measure of damages to compensation to the plaintiff for injuries done by the publication of the document referred to. If plaintiff was caused mental suffering or loss of business on account of the fact that his son had been sent to the penitentiary, if such facts had been proved, the jury must have understood from the court's charge that no compensation could be awarded in this case because of such injuries sustained by the plaintiff. Besides, there was no proof tending to show that the plaintiff was in any wise to blame for his son's commission of the felony, and therefore, in the absence of affirmative proof showing such fact, we do not think it should be presumed that the fact of the son's committing such an offense and being sent to the penitentiary therefor would necessarily result in injury to the plaintiff's business; therefore, we have reached the conclusion that the testimony referred to was too remote, and that the court did not err in excluding it.

The other questions presented in the motion have been duly considered, and are decided against appellants.

Motion overruled.